UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON SHEPHERD,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ROBERT NUESCHMID, et al..<br><br>　　　　Defendants. | No. 2:19-cv-0084 JAM DB P<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. § 1983.  Before the court are plaintiff's motion to proceed in forma pauperis and plaintiff's complaint for screening.  For the reasons set forth below, this court grants plaintiff's motion to proceed in forma pauperis and finds plaintiff fails to state any potentially cognizable claims.  This court will dismiss plaintiff's complaint with leave to amend.

**IN FORMA PAUPERIS**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

1

forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

**SCREENING**

**I.     Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.

738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

**II.    Analysis**

**A. Allegations of the Complaint**

Plaintiff complains of conduct that occurred at California State Prison, Solano ("CSP-Sol") in 2017. Plaintiff identifies the following ten defendants: (1) Scott Kernan, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); (2) Robert Nueschmid, Warden at CSP-Sol; (3) Robert Mitchell, Associate Warden at CSP-Sol; (4) Custody Captain Justice; (5) Correctional Lieutenant Jesse Rubalcaba; (6) Correctional Lieutenant Scott Norton; (7) Correctional Sergeant A. Cornwell; (8) Correctional Officer ("CO") Skylar Hanlon; (9) CO Troxil; and (10) CO Mironov.

Plaintiff alleges that on August 13, 2017, defendant Rubalcaba observed plaintiff on video placing something into the rear area of his pants. Rubalcaba sent defendant Hanlon to conduct a full body strip search of plaintiff. When Hanlon asked if plaintiff had any contraband, plaintiff stated that he did and voluntarily surrendered two bindles.

Hanlon then directed defendant Troxil to scan plaintiff's torso and rectal area using the "Admni Low Dose Full Body Scanner." Troxil performed the scan and informed Hanlon that he

3

detected no contraband. Nonetheless, Hanlon ordered plaintiff to go on contraband surveillance watch ("CSW"). Defendant Justice approved plaintiff's placement on CSW. Plaintiff describes CSW as requiring an inmate to be placed in two sets of underwear, one placed on correctly and the other backwards, which are taped at the waist and thighs. The inmate is then placed in two jumpsuits, one correctly and the other backwards, taped at the thighs, ankles, waist, and upper arms. Finally, the inmate is placed in waist chain restraints.

Defendant Cornwell oversaw officers putting plaintiff into the clothing and restraints for CSW. Plaintiff alleges that he was placed in jumpsuits that were much too small. He informed Cornwell of this, but Cornwell ignored it. Plaintiff also complained to Cornwell that the tape and restraints were too tight and were cutting off his circulation. Cornwell ignored those complaints as well.

Plaintiff was on CSW for three days. He contends that because the mattress was removed from the cell during the day, he was forced to "lay in a fetal position on an all metal bunk during the day." The restraints and tight clothing caused him to choke for air.

On August 14, 2017, plaintiff asked defendant Mironov to remove his restraints, so he could urinate. Mironov told plaintiff that he would have to wait until defendant Cornwell returned. Mironov made some attempts to locate Cornwell. After about 45 minutes, plaintiff could no longer wait and soiled himself, which was witnessed by the officer guarding him. Cornwell did not return until 60 minutes after plaintiff first sought to urinate. Plaintiff asked to speak to a supervisor about why Cornwell had abandoned his post in violation of prison policy, according to plaintiff. Defendant Norton came to plaintiff's cell and informed plaintiff that Cornwell had been in a "nonemergency meeting." Plaintiff states that because he was forced to hold his urine, he suffered bladder damage and remains on medication for this injury.

Cornwell then uncuffed one of plaintiff's hands, undressed him, and allowed plaintiff to clean himself. Plaintiff complains that he was forced to sit naked in full body restraints in view of passersby. He also complains that he was forced to urinate and have bowel movements in front of both male and female staff.

////

Plaintiff further complains that the constant lighting in the CSW cell deprived him of sleep during that time. And, he states that because he was not permitted to shower for three days, his living conditions were unsanitary.

Plaintiff alleges he suffered "significant psychological injury" as a result of his detainment in CSW.

Plaintiff claims defendant Nueschmid, as warden, failed to train and manage staff. He alleges defendant Mitchell, who was in charge of "enforcement and implementation" of the CSW procedures, failed in his duties because plaintiff was "illegally placed" on CSW. He alleges defendant Justice was responsible for ensuring officers adhered to the CSW procedures and failed to do so.

Plaintiff contends that several defendants[1] falsified incident reports to justify plaintiff's CSW placement. He further contends defendant Hanlon created a false rules violation report ("RVR") charging plaintiff with distribution of a controlled substance. At the RVR hearing, defendant Norton found plaintiff guilty based on false evidence. As a result, plaintiff was assessed 180 days loss of credits and loss of numerous privileges.

Throughout his complaint, plaintiff cites numerous regulations and prison policies that he contends defendants violated.

Plaintiff states that his injuries are "physical injury, humiliation, emotional distress, sleep deprivation, pain and suffering."

Plaintiff seeks declaratory relief and punitive and compensatory damages.

**B. Does Plaintiff State Cognizable Claims?**

Plaintiff identifies the following claims: (1) defendants Rubalcaba, Hanlon, Justice, and Troxil violated his Eighth Amendment rights when they placed him on CSW; (2) defendants Rubalcaba , Hanlon, Justice, Cornwell, and Troxil used excessive force when they bound plaintiff

---

[1] Plaintiff also lists "Hall" and "Paviliglo" in this part of his complaint. However, he does not include them in the list of defendants. Accordingly, this court assumes for purposes of screening, that plaintiff is not alleging claims against these people. Further, to the extent he seeks to claim Hall and Paviliglo falsified incident reports, as described in the text below, that conduct does not amount to a constitutional violation cognizable under § 1983.

too tightly for the three days he was on CSW; (3) defendants Mironov, Cornwell, and Norton forced plaintiff to urinate on himself and did not permit him to adequately clean himself; (4) defendants Hanlon, Justice, Troxil, and Rubalcaba violated plaintiff's rights to equal protection of the laws when they put plaintiff on CSW but did not put another inmate alleged to have secreted contraband on CSW; (5) defendants Hanlon, Justice, Cornwell, Troxil, Mitchell, Nueschmid, and Rubalcaba intentionally inflicted emotional distress on plaintiff in violation of state law; (6) defendants Hanlon, Justice, Cornwell, Troxil, Mitchell, Norton, Nueschmid, and Rubalcaba were negligent when they placed plaintiff on CSW and when they caused plaintiff to urinate on himself. (ECF No. 1 at 22-25.)

### 1. Eighth Amendment Excessive Force

#### a. Legal Standards

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson, 503 U.S. at 5 (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

For claims arising out of the use of excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson, 503 U.S. at 7). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8, and although de minimis uses of

6

force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, <u>Wilkins</u>, 559 U.S. at 37-8 (citing <u>Hudson</u>, 503 U.S. at 9-10).

### b. Does Plaintiff state Excessive Force Claims?

In his first claim, plaintiff alleges Rubalcaba, Hanlon, Justice, and Troxil violated his Eighth Amendment rights when they placed him on CSW. The placement on CSW does not allege an Eighth Amendment claim. Rather, to state a claim under the Eighth Amendment, plaintiff must show that each defendant was deliberately indifferent to a serious deprivation of his rights. Plaintiff has no constitutional right to be free of CSW. <u>See</u> <u>Chappell v. Mandeville</u>, 706 F.3d 1052, 1057-62 (9th Cir. 2013) (California's CSW procedures are not unconstitutional per se). And, the court in <u>Chappell</u> held that the ordinary aspects of CSW, including continuous lighting, deprivation of a mattress, and being continuously shackled, did not amount to an Eighth Amendment violation. While excessive deprivation of sleep may constitute an Eighth Amendment violation, plaintiff fails to show that defendants required that lighting deliberately to inflict unnecessary sleep deprivation. Rather, continuous lighting was a regular part of the CSW procedures required to assure that inmates did not attempt to rid themselves of contraband. <u>See id.</u>

Further, an officer's noncompliance with prison regulations is not cognizable under § 1983 unless it rises to the level of a violation of a constitutional right. <u>See</u> <u>Davis v. Scherer</u>, 468 U.S. 183, 192 (1984); <u>Nurre v. Whitehead</u>, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of a federal constitutional right). Finally, it is not clear why plaintiff included defendants Rubalcaba and Troxil in this claim. He alleges that Hanlon ordered him placed in CSW and that Justice approved that order. He does not allege that Rubalcaba and Troxil were involved in that decision. In order to allege a claim of deliberate indifference, plaintiff must link the actions of a defendant to the conduct he complains of. Plaintiff's first claim will be dismissed.

In his second claim, plaintiff makes a better showing of an Eighth Amendment violation. He contends defendants Rubalcaba, Hanlon, Justice, Cornwell, and Troxil used excessive force when

they bound plaintiff too tightly for the three days he was on CSW. While plaintiff's showing here is better, it is still insufficient under § 1983. First, plaintiff again fails to allege that some of these defendants were involved in the conduct complained of - applying the restraints that he contends were too tight. Plaintiff alleges that unnamed officers put him into the clothing and restraints. Defendant Cornwell oversaw the procedures. Plaintiff complained to Cornwell that the jumpsuits were much too small and the restraints were so tight that they were cutting off his circulation. Cornwell did nothing in response. Accordingly, plaintiff has only alleged facts supporting a potential claim against Cornwell for excessive force.

Plaintiff's claim against Cornwell is insufficient, however. It is unclear from plaintiff's allegations just what Cornwell was responsible for. Plaintiff states that for the three days he was on CSW, he was in pain and had some difficulty breathing due to the tightness of the tape and restraints. Yet, plaintiff alleges that on August 14, 2017, the day after he was placed on CSW, he was forced to sit naked in full view of passersby to clean himself. He does not contend that when he was placed back in clothing and restraints, they were still too tight. Plaintiff must provide more specificity about how long he was in the too-small jumpsuit and overly tight restraints approved by Cornwell. Plaintiff's second claim will be dismissed with leave to amend.

### 2. Eighth Amendment Conditions of Confinement

#### a. Legal Standards

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To state a claim for threats to safety or health, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks. Id. at 834; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). To adequately allege deliberate indifference, a plaintiff must set forth facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. Farmer, 511 U.S. at 837. That is, "the official must both be aware of facts from which the

////

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

A lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment. See Johnson v. Lewis, 217 F.3d 726, 732-33 (9th Cir. 2000) (prisoners' allegations that they did not receive access to toilets for an extended period, and then were not allowed to clean themselves after, if believed, is sufficiently serious to satisfy objective component); see also Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995) (a lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment); Knop v. Johnson, 667 F. Supp. 467, 480 (W.D. Mich. 1987) (violation of Eighth Amendment where prison staff does not provide inmates "necessary access to toilet facilities and a washbasin and thus subject them to a substantial risk of having to defecate or urinate in their room without the benefit of a flushable toilet or a washbasin.").

### b. Does Plaintiff state Conditions of Confinement Claims?

Plaintiff contends defendants Mironov, Cornwell, and Norton forced plaintiff to urinate on himself and did not permit him to adequately clean himself. To the extent plaintiff is attempting to assert this claim based on the humiliation he suffered from urinating on himself and having to be naked in his cell, those assertions are inadequate to state a constitutional claim. See 42 U.S.C. § 1997e(e) (no action under § 1983 "for mental and emotional injury suffered while in custody without a prior showing of physical injury.") The same is true for plaintiff's contention that he was watched while urinating and defecating by both male and female staff members. Further, while plaintiff contends he could not adequately clean himself, it is not clear that officers intended that result. Plaintiff was provided with cleaning supplies. He fails to show that the supplies he was provided were so inadequate that it amounted to a serious deprivation of his rights. Nor does plaintiff show that being unable to adequately clean himself caused him any physical harm.

To the extent plaintiff is alleging that being forced to wait an hour (the amount of time it took Cornwell to come to his cell so that he could be allowed to use the toilet) to urinate amounted to an Eighth Amendment violation, he does not state a cognizable claim. Temporary restrictions on

9

bathroom use, even ones lasting several hours, do not constitute the wanton infliction of pain or exhibit deliberate indifference to a prisoner's health or safety. See, e.g., Kanvick v. Nevada, No. 3:08-CV-00397, 2010 WL 2162324, at *5–6 (D. Nev. Apr.27, 2010) ("a temporary deprivation of access to toilets [lasting up to two hours], in the absence of physical harm or a serious risk of contamination, does not rise to the level of an Eighth Amendment violation"); Owens v. Padilla, No. C 06–4778, 2008 WL 3916068, at *4 (N.D. Cal. Aug. 22, 2008) (confinement in prison barbershop for six hours without access to bathroom did not state Eighth Amendment claim); Trevino v. Jones, No. 06-CV-0257, 2007 WL 710213, at *8 (N.D. Okla. Mar.06, 2007) (use of restrooms only twice during eight hour period does not constitute cruel and unusual punishment).

While plaintiff states that as a result of being forced to wait he has bladder problems, he does not show that the officers responsible for the one-hour delay were, or should have been, aware of that risk. Plaintiff fails to show deliberate indifference or a serious deprivation of his rights. This claim will be dismissed.

### 3. Equal Protection

Plaintiff argues that he was placed on CSW while another inmate who also had a clear contraband scan was not. According to plaintiff, that different treatment violates his rights to equal protection of the laws.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. Calif. Dept. of Corrs. and Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that defendants intentionally discriminated against plaintiff based on his membership in a protected class, Hartmann, 707 F.3d at 1123, or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 601–02 (2008). An Equal Protection claim may also exist where a policy that is neutral on its face has a disproportionate, or "disparate," impact on an identifiable group. Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-66 (1977).

Plaintiff does not contend that he is a member of a protected class, while the other inmate was not. Nor does plaintiff show that he and the other inmate were similarly situated. To state an equal protection claim, plaintiff must allege that he and this other inmate were the same in all relevant respects. The simple fact that both he and the other inmate had clear scans is insufficient to support an equal protection claim.

### 4. Other Possible Federal Claims

While plaintiff does not specifically list these issues as individual claims, it appears that he may be attempting to assert claims based on: (1) falsification of reports; (2) reliance on false information to find rules violation; (3) failure to train; and (4) failure to supervise. None of those allegations are sufficient to state claims for relief. First, plaintiff is advised that there is no due process right to be free from false disciplinary charges. The falsification of a disciplinary report does not state a stand-alone constitutional claim. See Luster v. Amezcua, No. 1:16-cv-0554-DAD-GSA-PC, 2017 WL 772141, at *5 (E.D. Cal. Feb. 27, 2017). Specifically, "the fact that a prisoner may have been innocent of disciplinary charges brought against him . . . does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, No. 1:14-cv-2084-SAB(PC), 2015 WL 1014257, *2 (E.D. Cal. Mar. 6, 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994) and McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)).

Second, to state a failure-to-train claim, plaintiff must show that "'in light of the duties assigned to specific officers or employees, the need for more or different training [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need.'" Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989)). Plaintiff must allege facts showing the failure to train resulted from a defendant's "deliberate" or "conscious" choice and that a sufficient causal connection exists between the supervisor's wrongful conduct and the alleged constitutional violation. Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998). Plaintiff's conclusory allegations that some of the supervisory defendants failed to train staff regarding CSW procedures is not cognizable.

11

Finally, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Therefore, to the extent plaintiff is making claims of supervisory liability, those claims are not cognizable here.

### 5. State Law Claims

With respect to plaintiff's state law claims for intentional infliction of emotional distress and negligence, he is advised that section 945.4 of the Government Claims Act provides that

> [n]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division *until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board*, in accordance with Chapters 1 and 2 of Part 3 of this division.

Cal. Gov't Code § 945.4 (emphasis added). Section 950.6 provides that

> "[w]hen a written claim for money or damages for injury has been presented to the employing public entity: (a) a cause of action for such injury may not be maintained against the public employee or former public employee whose act or omission caused such injury *until the claim has been rejected, or has been deemed to have been rejected, in whole or in part by the public entity*."

Cal. Gov't Code § 950.6 (emphasis added). See also Creighton v. City of Livingston, 628 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009) ("A plaintiff's supplemental state law claims against a California public agency are barred unless the plaintiff has complied with the requirements of the [Government] Claims Act before commencing a civil action.") (citing Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995)).

The claims-presentation requirement "constitutes an element of any cause of action arising under the Government Claims Act." Mohsin v. Cal. Dep't of Water Res., 52 F. Supp. 3d 1006,

1017-18 (E.D. Cal. 2014). Failure to meet this requirement subjects a claim to dismissal for failure to state a cause of action. Yearby v. California Dep't of Corr., No. 2:07–cv–2800 JAM KJN P, 2010 WL 2880180, at *4-5 (E.D. Cal. July 21, 2010), rep. and reco. adopted, 2010 WL 3769108 (E.D. Cal. Sept. 22, 2010). "Plaintiffs must 'allege facts demonstrating or excusing compliance with the claim presentation requirements.'" Butler v. Los Angeles County, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008) (quoting State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1239 (2004) (holding that "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action")).

Because plaintiff has not alleged that he complied with the Government Claims Act, his state law claims will be dismissed. If plaintiff amends his complaint, he may demonstrate such compliance.

### 6. Doe Defendants

In several parts of his complaint, plaintiff mentions "Doe" defendants. There is no provision in the Federal Rules of Civil Procedure for including unnamed defendants, also called "Doe" defendants, in a complaint. The use of Does in pleading practice is generally disfavored – but it is not prohibited. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999); Lopes v. Viera, 543 F. Supp. 2d 1149, 1152 (E.D. Cal. 2008). However, plaintiff must allege facts showing when, where, and how each Doe defendant violated his constitutional rights. See Addis v. Ariz. Dept. of Corrs., No. CV14-1115-PHX-DGC, 2015 WL 875233, at *3 (D. Ariz. Mar. 2, 2015). Under § 1983, plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell, 436 U.S. at 691, 695.

In any amended complaint, to allege claims against unnamed individuals, plaintiff must identify each individual (for example, by calling them Doe 1 and Doe 2) and explain what each

////

one did.  Further, plaintiff must make every effort to determine the identity of each defendant prior to filing an amended complaint.

## CONCLUSION

Plaintiff fails to state any potentially cognizable claims under 42 U.S.C. § 1983.  Plaintiff will be permitted an opportunity to amend his complaint to attempt to state claims.  Plaintiff is warned that in any amended complaint he must include ALL claims he wishes to proceed on in this action.

In an amended complaint, plaintiff must address the problems with his complaint that are explained above.  Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights.  The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant.  If plaintiff wishes to add a claim, he must include it in the body of the complaint.  The charging allegations must be set forth in the amended complaint, so defendants have fair notice of the claims plaintiff is presenting.  That said, plaintiff need not provide every detailed fact in support of his claims.  Rather, plaintiff should provide a short, plain statement of each claim.  See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true.  It must contain a request for particular relief.  Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right.  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R.
////

Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, the original pleading is superseded. By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is granted.
2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.
3. Plaintiff's complaint is dismissed with leave to amend.
4. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned this case and must be labeled "Amended Complaint"; failure to

////

file an amended complaint in accordance with this order may result in a recommendation that this action be dismissed.

5. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

Dated: March 14, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/shep0084.scrn lta