UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CAMERON SHEPHERD,

    Plaintiff,

v.

ROBERT NUESCHMID, et al..

    Defendants.

No. 2:19-cv-0084 JAM DB P

ORDER AND FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Before the court is plaintiff's second amended complaint for screening. For the reasons set forth below, this court finds plaintiff has stated cognizable claims against defendant Cornwell, but fails to state potentially cognizable claims against the remaining defendants. This court will recommend plaintiff's claims against those remaining defendants be dismissed.

**SCREENING**

As described in this court's prior screening orders, the court is required to screen complaints brought by prisoners to determine whether they sufficiently state claims under 42 U.S.C. § 1983. 28 U.S.C. § 1915A(a). The prisoner must plead an arguable legal and factual basis for each claim in order to survive dismissal. Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). In addition, the prisoner must demonstrate a link between the actions of each defendant and the

deprivation of his rights.  Monell v. Dept. of Social Servs., 436 U.S. 658 (1978).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

**I.      Allegations in the Second Amended Complaint**

Plaintiff complains of conduct that occurred at California State Prison, Solano ("CSP-Sol") in 2017.  Plaintiff identifies the following ten defendants: (1) Scott Kernan, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); (2) Robert Nueschmid, Warden at CSP-Sol; (3) Robert Mitchell, Associate Warden at CSP-Sol; (4) Custody Captain Justice; (5) Correctional Lieutenant Jesse Rubalcaba; (6) Correctional Lieutenant Scott Norton; (7) Correctional Sergeant A. Cornwell; (8) Correctional Officer ("CO") Skylar Hanlon; (9) CO Troxil; and (10) CO Mironov.

Plaintiff alleges that on August 13, 2017 while he was in the visiting area, he was "mistakenly" observed on video with one hand behind his back as if he was placing something into the rear of his pants.  He was then approached by an officer who removed him from the visiting room and told plaintiff he suspected plaintiff of secreting contraband in his rectal cavity.  Plaintiff told the officer he was just scratching because he has a skin disorder on his buttocks.  The officer called defendant Hanlon, who conducted a full body search, which revealed no contraband.

X-ray technician, defendant Troxil, conducted a body scan of plaintiff and of inmate Sanders, who was also suspected of having contraband.  The x-ray showed no contraband for either plaintiff or Sanders.

While Sanders was then allowed to leave, defendants Rubalcaba and Hanlon wrote false reports which stated that plaintiff's x-ray results were "undetermined."  Plaintiff alleges they deliberately lied to have plaintiff placed on contraband watch.  The order for contraband watch was approved by defendants Nueschmid, Mitchell, and Justice.

Plaintiff states that a nurse examined him and "confirmed that nothing was inside my body."

Defendant Cornwell then placed plaintiff in the clothing for contraband watch. Cornwell taped the clothing around plaintiff's thighs, waist, and arms so tightly that it cut off plaintiff's circulation. Plaintiff told Cornwell the bindings were too tight but Cornwell ignored him. He also placed plaintiff in three jumpsuits that were too small and too tight around plaintiff's neck and groin. Plaintiff told Cornwell he could not breathe, but Cornwell again "chose to ignore it."

In the cell, plaintiff lay on a metal bed with no mattress in a fetal position, to relieve the pressure on his neck. He was only provided a mattress at night, which prevented him from sleeping during the day. In addition, the lights were left on 24 hours-a-day.

When plaintiff was having difficulty having a bowel movement, Cornwell advised him to drink a lot of water, which caused plaintiff to have to urinate frequently.

On August 14, 2017, defendant Mironov contacted Cornwell at least three times because plaintiff needed to urinate and only Cornwell could remove his restraints so that plaintiff could do so. Despite Mironov's efforts, it took Cornwell 60 minutes to come to the cell. By that time, plaintiff had urinated on himself.

After plaintiff was allowed to clean himself, Cornwell reapplied the clothing and restraints in an overly tight manner again.

Plaintiff contends he suffered back injuries, damage to his lower urinary tract, sleep deprivation, pain and various mental health issues as a result of the contraband watch. He seeks compensatory and punitive damages.

**II.     Does Plaintiff state Cognizable Claims for Relief?**

Plaintiff states that he is alleging the following federal claims: (1) his due process rights were violated by defendants Rubalcaba, Justice, Nueschmid, Mitchell, and Hanlon when they made the decision to place him on contraband watch; (2) defendant Cornwell used excessive force in violation of the Eighth Amendment; (3) Cornwell deprived plaintiff of his basic human needs on contraband watch and when he was not permitted to urinate when needed; (4) defendants Rubalcaba, Hanlon, Justice, Nueschmid, and Mitchell were deliberately indifferent when they placed plaintiff on contraband watch; (5) defendants Nueschmid, Mitchell, Justice and Rubalcaba violated plaintiff's rights by failing to properly train and supervise staff and by

allowing plaintiff to be X-rayed without a warrant signed by a judge; (6) defendants Nueschmid, Justice, Mitchell, and Rubalcaba violated plaintiff's rights to equal protection of the laws because he was similarly situated with inmate Sanders, yet Sanders was not required to go on contraband watch; and (7) the X-ray was an unreasonable search in violation of the Fourth Amendment.

In addition, plaintiff alleges state law claims for: (1) "intentional negligence" against defendants Hanlon, Mironov, Nueschmid, Rubalcaba, Mitchell, and Cornwell; and (2) intentional infliction of emotional distress against defendants Cornwell and Mironov.

**A.  Federal Law Claims**

As he has in his two prior complaints, plaintiff fails to state any potentially cognizable claims for relief against most defendants. The court can discern no conduct by defendants Troxil or Mironov that could be considered objectionable, much less unconstitutional. Troxil simply conducted the X-rays. Mironov was in charge of plaintiff when plaintiff needed to urinate and, based on the facts alleged by plaintiff, made reasonable efforts to obtain defendant Cornwell so that plaintiff's restraints could be removed. Defendants Troxil and Mironov should be dismissed.

**1.  Claims Against Supervisory Defendants**

Plaintiff makes no allegations regarding defendants Kernan or Norton. To the extent he includes them in the complaint as supervisors, supervisory liability may not be a ground for relief, as plaintiff has been informed previously. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979). Therefore, plaintiff also cannot state supervisory liability claims against defendants Nueschmid, Mitchell, Justice, and Rubalcaba. Nor has plaintiff stated direct liability claims against defendants Nueschmid, Mitchell, or Justice. Plaintiff fails to set out any facts showing that Nueschmid, Mitchell, or Justice were aware that plaintiff was, according to plaintiff, improperly X-rayed or improperly placed on contraband watch.

Plaintiff's claim against those defendants, and others, for failure to train or supervise also has no basis. As plaintiff was informed previously, to state a claim for failure to train or supervise, plaintiff must allege facts showing the failure to train or supervise resulted from a defendant's "deliberate" or "conscious" choice and that a sufficient causal connection exists between the supervisor's wrongful conduct and the alleged constitutional violation. Canell v. Lightner, 143

F.3d 1210, 1213 (9th Cir. 1998). Plaintiff's conclusory allegations in the SAC, like those in his original complaint, that some of the supervisory defendants failed to train or supervise staff is not cognizable. Defendants Kernan, Norton, Nueschmid, Mitchell, and Justice should be dismissed.

### 2. Due Process Claim

With respect to plaintiff's claim of a due process violation regarding the procedures, or lack thereof, for being placed on contraband watch, plaintiff was informed previously that placement on temporary contraband watch does not implicate a liberty interest and does not trigger due process protections. See Chappell v. Mandeville, 706 F.3d 1052, 1057-65 (9th Cir. 2013). Therefore, this claim should be dismissed.

### 3. Equal Protection Claim

With respect to plaintiff's claim of an equal protection violation regarding the differences between his treatment and the treatment of Sanders, the court first notes that plaintiff appears to be telling different stories in each version of his complaint. In his original complaint, plaintiff stated that the report on the incident stated that plaintiff voluntarily turned over two bindles of drugs when originally confronted. (ECF No. 1 at 10.) Plaintiff did not provide the court with any different version of that incident. In his first amended complaint, plaintiff stated only that the report said two bindles were found upon a search of plaintiff. (ECF No. 13 at 8.) Again, plaintiff made no allegations to contradict the report's statement. Now, for the first time, plaintiff is alleging that no contraband was found. (ECF No. 17 at 10-11.) Plaintiff does not explain why, in his previous complaints, he stated that the report showed that plaintiff had two bindles of drugs. It is unclear if plaintiff is alleging officers were untruthful in the reporting of their findings after plaintiff was removed from the visiting room. Or, whether plaintiff is simply attempting to re-fashion the "facts" upon which to base his claims.

In any event, whether officers did or did not find contraband on plaintiff, he fails to state an equal protection claim. As plaintiff was informed in the court's first screening order, he must show he was a member of a protected class or that he and inmate Sanders were in all relevant respects similar. Plaintiff fails to do so. For example, plaintiff states that officers saw plaintiff

////

5

reach down into his pants. Plaintiff does not allege they saw Sanders do the same thing. Plaintiff's equal protection claim should be dismissed.

### 4. Eighth Amendment Claims

Plaintiff's contention that depriving him of the ability to urinate for an hour violated his 8th Amendment right to have his basic needs met was also raised previously. As the court informed plaintiff in prior screening orders, many courts have held that temporary restrictions on bathroom use do not state a cognizable claim. See, e.g., Kanvick v. Nevada, No. 3:08-CV-00397, 2010 WL 2162324, at *5–6 (D. Nev. Apr.27, 2010). Plaintiff makes no showing that defendant Cornwell should have known that requiring plaintiff to wait for an hour to urinate would cause plaintiff urinary tract problems.

To the extent plaintiff is alleging that the normal conditions of a temporary (here, three-day) contraband watch – continual lighting, mattress available only at night, being forced to wear restrictive clothing and shackles – violated his Eighth Amendment rights, that claim is also not cognizable because allegations are insufficient to show any defendants who were responsible for plaintiff's placement on contraband watch were deliberately indifferent to a "risk of serious harm" to plaintiff. See Chappell, 706 F.3d at 1059; cf. Farmer v. Brennan, 511 U.S. 825, 847 (1994).

As he has previously, plaintiff does state a claim for excessive force against defendant Cornwell. Plaintiff alleges Cornwell's application of plaintiff's clothing and restraints caused them to be so tight that plaintiff had difficulty with his circulation, difficulty breathing, and pain. Plaintiff alleges Cornwell was aware of that the restraints were overly tight and failed to take any action to adjust them. In addition, plaintiff alleges he suffered harm as a result of being in the restraints for the three days he was on contraband watch.

### 5. Fourth Amendment Claim

Plaintiff's claim that the X-ray constituted an unreasonable search in violation of the Fourth Amendment is not cognizable. "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the

promotion of legitimate governmental interests." United States v. Knights, 534 U.S. 112, 118-19 (2001) (internal quotations and citation omitted); see also United States v. Scott, 450 F.3d 863, 867 (9th Cir. 2006) ("Under modern Fourth Amendment jurisprudence, whether a search has occurred depends on whether a reasonable expectation of privacy has been violated."). "Usually, Fourth Amendment reasonableness means that a search or seizure must be supported by probable cause, though pat-downs and similar minor intrusions need only be supported by reasonable suspicion." Scott, 450 F.3d at 868.

Plaintiff fails to show that officers had no reason to suspect he may have secreted contraband. Even if the court disregards plaintiff's prior complaints which, as described above, show that officers reported plaintiff had two bindles of drugs in his possession, plaintiff's current complaint shows that officers believed they saw plaintiff place his hand down the back of his pants while in the visiting room. Prisons have a legitimate penological interest in deterring the introduction of contraband into a prison, a problem that courts have recognized as pervasive and serious. See Hudson v. Palmer, 468 U.S. 517, 527 (1984) ("attempts to introduce drugs and other contraband into [prison] premises ... is one of the most perplexing problems of prisons"); Bell v. Wolfish, 441 U.S. 520, 559 (1979) ("Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence" in prisons.); Del Raine v. Williford, 32 F.3d 1024, 1039-42 (7th Cir. 1994) ("The fact that prisoners are willing to place such dangerous objects into body cavities that most people rarely display to others demonstrates as much about the guile and bravado of certain prisoners as it does about the government's need to search, both visually and physically, such private areas of the body."). An X-ray scan was a non-intrusive way to determine whether plaintiff might have contraband. Airline passengers are regularly required to submit to similar scans just to board an airplane. The court finds plaintiff's allegation insufficient to state a Fourth Amendment claim.

**B. State Law Claims**

Plaintiff alleges he was subjected to the intentional infliction of emotional distress by numerous defendants and that they failed to exercise reasonable care when they placed him on

////

contraband watch. Plaintiff also claims Cornwell was negligent in leaving his post for an hour, which caused plaintiff to urinate on himself.

The elements of a negligence cause of action under California law are: "(1) a legal duty to use due care; (2) a breach of such legal duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care." Megargee v. Wittman, 550 F. Supp. 2d 1190, 1209 (E.D. Cal. 2008) (citations omitted)). It is a "long-established principle of California negligence law that the reasonableness of a peace officer's conduct must be determined in light of the totality of the circumstances." Hayes v. County of San Diego, 57 Cal.4th 622, 632 (2013) (citations omitted).

Plaintiff added allegations from his prior complaint regarding Cornwell's actions prior to leaving plaintiff without bathroom access. Liberally construing plaintiff's allegations, the court finds he has stated a claim for negligence against defendant Cornwell for leaving plaintiff for an hour after telling plaintiff to drink a lot of water. However, plaintiff does not state cognizable negligence claims against the remaining defendants. To the extent they were involved in the decision to place plaintiff on contraband watch or were involved in the policies creating it, plaintiff fails to show those actions were unreasonable.

The elements of an intentional infliction of emotional distress claim under California law are: "outrageous conduct by defendant, (ii) an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii) severe emotional distress, and (iv) an actual and proximate causal link between the tortious conduct and the emotional distress." Nally v. Grace Community Church of the Valley, 47 Cal. 3d 278, 300 (1988) (citation omitted). Again, plaintiff's allegations support this state law tort claim against defendant Cornwell with respect to binding plaintiff too tightly, but not against the remaining defendants.

Plaintiff states that he submitted a claim under the Government Claims Act for these state law claims. The court finds he has adequately alleged claims for intentional infliction of emotional distress and negligence against defendant Cornwell.

////

////

8

**CONCLUSION**

The court finds above that plaintiff has stated the following potentially cognizable claims against defendant Cornwell: (1) excessive force in violation of the Eighth Amendment; (2) intentional infliction of emotional distress; and (3) negligence. After twice being provided in the prior screening orders with the standards to do so, plaintiff again fails to state claims against the remaining defendants. The court further finds any further attempts to state claims against those defendants would be futile. This case should proceed on plaintiff's claims against defendant Cornwell, as described above.

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Plaintiff has stated potentially cognizable federal claims under the Eighth Amendment against defendant Cornwell and potentially cognizable state law claims for intentional infliction of emotional distress and negligence against Cornwell.

2. Service of the second amended complaint is appropriate for defendant Cornwell.

3. The Clerk of the Court shall send plaintiff one USM-285 form, one summons, an instruction sheet, and a copy of the second amended complaint filed June 28, 2019.

4. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Submission of Documents and submit all of the following documents to the court at the same time:

    a. The completed, signed Notice of Submission of Documents;

    b. One completed summons;

    c. One completed USM-285 form for defendant Caldwell; and

    d. Two copies of the endorsed second amended complaint filed June 28, 2019.

5. Plaintiff shall not attempt to effect service of the amended complaint on defendant or request a waiver of service of summons from defendant. Upon receipt of the above-described documents, the court will direct the United States Marshal to serve the above-named defendant pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

////

Further, IT IS RECOMMENDED that:

1. Plaintiff's claims against defendants Kernan, Nueschmid, Mitchell, Justice, Rubalcaba, Norton, Hanlon, Troxil, and Mironov be dismissed; and
2. Plaintiff's claims against defendant Cornwell, except the claims found cognizable herein, be dismissed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 31, 2019

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/shep0084.SAC scrn

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CAMERON SHEPHERD,

    Plaintiff,

  v.

ROBERT NUESCHMID, et al.,

    Defendants.

No. 2:19-cv-0084 JAM DB P

<u>NOTICE OF SUBMISSION</u>

    Plaintiff submits the following documents in compliance with the court's order filed _____:

    \_\_\_\_    completed summons form

    \_\_\_\_    completed USM-285 forms

    \_\_\_\_    copies of the Second Amended Complaint

DATED:

                              Plaintiff