UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIORNIA

| | |
|---|---|
| CAMERON SHEPHERD,<br><br>             Plaintiff,<br><br>       v.<br><br>A. CORNWELL,<br><br>             Defendant. | No.  2:19-cv-084 JAM DB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff alleges defendant violated his Eighth Amendment rights by binding him too tightly during contraband surveillance watch ("CSW") and that defendant was negligent and caused plaintiff emotional distress when he told plaintiff to drink a lot of water and left him for an hour without permitting him to urinate.  Before the court is defendant's motion for summary judgment.  For the reasons set forth below, this court will recommend defendant's motion be granted.

**BACKGROUND**

This case is proceeding on plaintiff's second amended complaint ("SAC").  (ECF No. 17.)  At the time of the events at issue, plaintiff was incarcerated at California State Prison-Solano.  Plaintiff alleges that August 13, 2017, correctional officers suspected him of having contraband.  Defendant Cornwell then placed plaintiff under contraband surveillance watch ("CSW").

1

Plaintiff alleges that Cornwell taped clothing around plaintiff's thighs, waist, and arms so tightly that it cut off plaintiff's circulation. Plaintiff told Cornwell the bindings were too tight, but Cornwell ignored him. He also placed plaintiff in three jumpsuits that were too small and too tight around plaintiff's neck and groin. Plaintiff told Cornwell he could not breathe, but Cornwell again "chose to ignore it." Plaintiff was then forced to sleep in a cell with only a mattress, which was provided only at night, and lights on 24 hours per day.

When plaintiff was having difficulty having a bowel movement, Cornwell advised him to drink a lot of water, which caused plaintiff to have to urinate frequently.

On August 14, 2017, plaintiff told a correctional officer that he needed to urinate. The correctional officer contacted Cornwell at least three times because only Cornwell could remove plaintiff's restraints to permit plaintiff to urinate. Despite the officer's efforts, it took Cornwell 60 minutes to come to plaintiff's cell. By that time, plaintiff had urinated on himself. After plaintiff was allowed to clean himself, Cornwell reapplied the clothing and restraints in an overly tight manner again.

Plaintiff contends he suffered back injuries, damage to his lower urinary tract, sleep deprivation, pain and various mental health issues as a result of the CSW. He seeks compensatory and punitive damages.

On screening, this court found plaintiff stated a potential federal claim against defendant Cornwell for excessive force in violation of the Eighth Amendment when he bound plaintiff too tightly during CSW. This court further found that plaintiff stated potential state law claims for negligence and intentional inflection of emotional distress based on his allegations that Cornwell told plaintiff to drink a lot of water and then did not permit him to urinate for an hour. (ECF No. 18.)

## MOTION FOR SUMMARY JUDGMENT

**I. Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of

proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v.

3

Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the

4

nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**II. Analysis**

Defendant first argues that plaintiff did not exhaust any of his claims though the prison appeals process. In his second argument, defendant contends plaintiff also failed to exhaust his state law claims through the Government Claims Act. Below, this court finds plaintiff failed to exhaust his Eighth Amendment claim and recommends it be dismissed. This court then recommends the district court decline to exercise supplemental jurisdiction over plaintiff's state law claims.

**A. Exhaustion**

**1. Legal Standards for Exhaustion of Administrative Remedies**

**a. PLRA Exhaustion Requirement**

The Prison Litigation Reform Act of 1995 ("PLRA") mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with deadlines and other critical prison grievance rules is required to exhaust. Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly"). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'" (quoting Jones, 549 U.S. at 218)).

Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc). As explicitly stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative

remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. Albino, 747 F.3d at 1168. "Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1171-72. A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth v. Churner, 532 U.S. 731, 738 (2001). If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172. Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]he ultimate burden of proof," however, never leaves the defendant. Id.

### b. California's Inmate Appeal Process

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material

adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  At the time plaintiff filed his appeals,[1] inmates in California proceeded through three levels of appeal to exhaust the appeal process:  (1) formal written appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR").  Cal. Code Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level review may be bypassed.  Id.  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id., § 3084.7(d)(3).  However, a cancellation or rejection decision does not exhaust administrative remedies.  Id., § 3084.1(b).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(3).  Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and they must "describe the specific issue under appeal and the relief requested."  Id. § 3084.2(a)(4).  The appeal should not involve multiple issues that do not derive from a single event.  Id. § 3084.6(b)(8).

An inmate has thirty calendar days to submit their grievance from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed."  Cal. Code Regs. tit. 15, § 3084.8(b).

### 2. Discussion of Exhaustion of Eighth Amendment Claim

The parties do not dispute that the only appeal in which plaintiff raised claims regarding the August 2017 CSW was appeal no. CSP-S-17-01965.  (See Plaintiff's Depo. (ECF No. 74-3 at 5-8[2]); Plaintiff's Oppo. to Motion to Dismiss (ECF No. 78-1 at 2); Defendant's Motion to

---

[1] In 2020, California changed the grievance system from a three-tier system to a two-tier system. That change was effective in June 2020, after plaintiff initiated the relevant appeals in the present case.  See Cal. Code Regs. tit. 15, § 3480.  All citations to the California code in the text refer to the prior law.

[2] The appeal is mistakenly referred to as CSP-17-01865 in plaintiff's deposition.

7

Dismiss (ECF No. 74-1 at 5).) The parties include copies of that appeal with their briefs. (ECF No. 74-5 at 9-20; ECF No. 78 at 46-50.[3])

In the original appeal, plaintiff complained that defendant violated his Eighth Amendment rights when he failed to return to plaintiff's CSW cell when plaintiff needed to urinate, which resulted in plaintiff urinating on himself. Plaintiff described the restraints but did not allege they were too tight or otherwise complain about them, except to note that he required an officer to remove them. (See ECF No. 74-5 at 11, 13.)

Plaintiff argues that he could not raise the restraints issue because the grievance form has only a small space to state his complaints. The court does not find this argument convincing. Plaintiff described in some detail the facts that resulted in being forced to urinate on himself. Plaintiff could have chosen to omit one or two sentences of this description and add the restraints issue. Plaintiff could also have chosen to submit a second appeal regarding the restraints issue. Because he did neither, and because those were reasonable options available to plaintiff, this court finds that the appeal forms' limitation on space did not render plaintiff's appeals "unavailable." Cf. Albino, 747 F.3d at 1172 (Administrative remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." (citation omitted).)

After the prison bypassed the first level of review, plaintiff was interviewed by Correctional Lieutenant Pongyan on September 19, 2017 regarding his appeal. (See ECF No. 74-5 at 11-12, 15-16.) Plaintiff contends he told Pongyan during that interview that he was also challenging the tightness of the restraints. (See ECF No. 78-1 at 9.) While plaintiff directs the court to review Pongyan's report, it appears that neither party has provided it.[4] In any event, it bears little, if any, relevance to this court's consideration of the exhaustion issue. Even if plaintiff did tell Pongyan during the interview that he sought to add an excessive force claim regarding the

---

[3] Plaintiff's copy does not include the full appeal packet – his appeals to each level and the decision at each level. Therefore, this court looks to the copy provided by defendant. Plaintiff does not dispute that the copy provided by defendant is a complete and correct copy.

[4] Pursuant to a protective order, Pongyan's report was to be submitted, if at all, under seal. (See ECF No. 80.)

tightness of his restraints, he failed to notify the Office of Appeals, the third level of review, that he wished to make that one of the bases for his appeal.

In his appeal of the second level decision, plaintiff argued: (1) he should not have been placed on CSW; (2) his restraints caused him to be under prison officials' "full power" regarding bathroom use; (3) Cornwell should not have prioritized a non-emergency meeting over allowing plaintiff to urinate; and (4) Pongyan's investigation was inadequate because she did not obtain reports from all involved staff members. (ECF No. 74-5 at 12, 14.) Plaintiff does not mention the tightness of his restraints or indicate in any way that he was challenging the second level denial of his claim on that basis.

Even if plaintiff had raised the restraints issue in his appeal of the second level response, he would not have exhausted his administrative remedies. California regulations require new issues to be raised in a separate appeal. California Code of Regulations, title 15, § 3084.1(b) states: "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted [appeal] and addressed through all required levels of administrative review up to and including the third level." Thus, new claims are not permitted as the appeal moves through the levels of review. A prisoner does not exhaust administrative remedies when he includes new issues from one level of review to another. Mitchell v. Pena, No. 1:11-cv-01205-JLT LJO PC, 2013 WL 3733593, at *5 (E.D. Cal. July 15, 2013) (citing Rodgers v. Tilton, CIV. No. 2:07–02269–WBS–DAD, 2011 WL 3925085, at 2 (E.D. Cal. Sept.1, 2011), rep. and reco. adopted, 2013 WL 4009750 (E.D. Cal. Aug. 5, 2013); Dawkins v. Butler, No. 09CV1053 JLS (DHB), 2013 WL 2475870, *8 (S.D. Cal. July 7, 2013) (a claim made for the first time in plaintiff's request for Third Level review was insufficient to exhaust the issue where it was not included in the original appeal); see also Woodford v. Ngo, 548 U.S. 81, 90-93 (2006) (Exhaustion under the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules.").

The undisputed facts show that plaintiff did not state any facts in appeal no. CSP-S-01796 that would have alerted prison officials that he was challenging the tightness of his restraints

during the August 2017 CSW. See Sapp, 623 F.3d at 824 (To exhaust an issue, prisoner must "alert the prison to the nature of the wrong for which redress is sought." (citations omitted).) Even if the court resolves any factual disputes in plaintiff's favor, plaintiff still has failed to exhaust the excessive force claim prior to filing his federal suit as required under the PLRA. For these reasons, plaintiff's claim that Cornwell used excessive force when he placed plaintiff in restraints that were too tight should be dismissed for plaintiff's failure to exhaust his administrative remedies.

### B. Supplemental Jurisdiction over State Law Claims

A district court "may decline to exercise supplemental jurisdiction" over state law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988), superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd., 235 F.3d 553, 557 (10th Cir. 2000); see also Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir. 2010); McKinney, 311 F.3d at 1201 ("[T]he district court appropriately declined to exercise its supplementary jurisdiction over the state claims" after dismissing federal claims for failure to exhaust administrative remedies. (citations omitted).); Strojnik v. Bakersfield Convention Hotel I, LLC, 436 F. Supp. 3d 1332, 1343 (E.D. Cal. 2020).

Remaining in federal court may be more convenient for plaintiff. However, that convenience should not compel the court to disregard basic concerns of comity - a state court is in a better position to resolve issues of state law. Therefore, the balance of factors does not tip in favor of retaining the state-law claims.[5]

////

////

---

[5] Because this court recommends dismissal of the state law claims on these grounds, it does not reach the exhaustion issues for those claims.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 74) be granted and plaintiff's claims be dismissed without prejudice.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 25, 2021

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB prisoner inbox/civil rights/S/shep0084.msj exh fr